OPINION
Tyrone Daniels was charged with aggravated menacing, to-wit: unlawfully and knowingly causing Jemica Postell to believe that he would cause serious physical harm to her or her property. After a bench trial at which Postell, her grandmother, Mary Billingsley, and Daniels testified, the trial court made a finding of guilty. The trial court stated that he found Postell and Billingsley credible witnesses and Daniels "to not be that credible." After obtaining a presentence investigation, the trial court imposed a fine of $1,000, $900 of which was suspended, and a sentence of 180 days, 170 of which was suspended. On appeal, Postell asserts in a single assignment of error that the judgment was against the manifest weight of the evidence.
The testimony of Postell was essentially as follows. Prior to the date of the alleged offense, February 5, 2000, Postell had lived at 844 Tyson Avenue in Dayton. While living there, she met Daniels, with whom she developed a "just friends" relationship. According to Postell, Daniels became possessive. He stalked her, "jumped on (her)" and threatened to kill her and her daughter. He also did drugs. By February 5, she had moved in with her grandmother at another location because she was afraid of Daniels. On that date, she returned to 844 Tyson in an automobile driven by Billingsley, and in which her eight-year-old daughter, Iesha, was also a passenger to retrieve some clothing. While retrieving the clothing, Postell observed some of Daniels' tools, which he had previously used to repair a vacuum cleaner for Postell. Postell decided to return these tools to Daniels' house at 747 Tyson. Postell had her daughter take the tools up to Daniels' door. After the child had returned to the car, Daniels emerged from the house and came out to the car stating to Postell: "I need to talk to you." Postell said that she told Daniels that she didn't have time to talk to him, and that Daniels replied: "You better get out of the car and talk to me." Postell said that she was frightened based on the events of the past where Daniels had jumped on her, threatened to kill her, and pistol-whipped her. She stated that Daniels' hands were in his pockets, and she thought that he might have a gun in his pocket. Postell testified that Daniels said: "If you try to move the car, I'll blow that son of a bitch up." She testified that she understood Daniels to be threatening to shoot the car up. Postell thought that Daniels would shoot up the car because in the past he had hit her with a gun and threatened her and her family. Postell told her grandmother to drive off but Billingsley refused to do so, telling Postell to get out of the car and talk to Daniels because if she didn't Daniels might shoot at the car and hit Iesha. Postell got out of the car, together with her daughter, because Billingsley told her that she didn't think Daniels would hurt either her or her child if the child was with her, and Daniels knew that Billingsley was outside 747 Tyson in the car. Postell denied on cross-examination that she "voluntarily" went into Daniels' house at 747 Tyson. She also admitted that she never saw a gun, and that Daniels told her she could leave after he had finished talking to her. She and the child apparently left the house without incident after entering the house and being spoken to by Daniels.
Billingsley corroborated the essentials of Postell's testimony. She stated that she also was afraid that Daniels would shoot up her car if she drove off, that Postell told her that she was scared, and that she advised Postell to talk to Daniels and to take the child with her because she didn't think Daniels would hurt the child or hurt Postell if her grandmother was outside the house.
Daniels narrated a set of facts which conflicted in many respects with the testimony of Postell and Billingsley and which was consistent with his not being guilty of the offense of aggravated menacing.
In determining whether the finding of guilty in this case was against the manifest weight of the evidence, we are guided by the formulation contained in State v. Thompkins (1997), 78 Ohio St.3d 380 at 387.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
Daniels argues on appeal that Postell's testimony is not worthy of belief because her decision to return the tools to Daniels at 747 Tyson was inconsistent with her stated fear of Daniels, and that her going into Daniels' house at 747 Tyson with her daughter was also inconsistent with her stated fear of Daniels. While these facts arguably undercut Postell's credibility, we believe that she provided a plausible explanation for returning the tools to 747 Tyson, and that Billingsley provided a plausible explanation for Postell and her daughter entering the house at 747 Tyson. Postell testified that Daniels had never hurt the child, implying that she thought it was safe to have her child carry the tools up to the front door of 747 Tyson. Billingsley likewise felt that Daniels would not hurt the child nor hurt Postell if she was with the child and Daniels also knew that the grandmother was waiting in the car outside 747 Tyson.
Credibility assessments are primarily the province of the trial court. Although Postell's actions in returning the tools and in entering 747 Tyson with her daughter arguably undercut the believability of her testimony that Daniels' threat to blow the car up placed her in fear of serious physical harm, we do not believe that these actions necessarily undercut the credibility of Postell's testimony. In short, we do not believe that the trial judge clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed, or that the evidence weighed heavily against conviction. Thompkins, supra.
Accordingly, the assignment of error is overruled, and the judgment will be affirmed.
BROGAN, J. and YOUNG, J., concur.